IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION


JACOB ANDREW THURBER,
  Petitioner,

vs.         Case No.:  3:15cv398/MCR/EMT

JULIE JONES,
  Respondent.
_____/

## <u>REPORT AND RECOMMENDATION</u>

  This cause is before the court on Petitioner's petition for writ of habeas corpus and supporting memorandum, filed pursuant to 28 U.S.C. § 2254 (ECF Nos. 1, 2). Respondent filed an answer and relevant portions of the state court record (ECF No. 21).  Petitioner filed a reply (ECF No. 25).

  The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b)(1)(B), (C) and Fed. R. Civ. P. 72(b).  After careful consideration of all issues raised by the parties, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rule 8(a), Rules Governing Section 2254 Cases.  It is further the

opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

## I.     BACKGROUND AND PROCEDURAL HISTORY

The relevant aspects of the procedural background of this case are established by the state court record (*see* ECF No. 21).[1]  Petitioner was charged in the Circuit Court in and for Escambia County, Florida, Case No. 2012-CF-3788, with one count of trafficking in amphetamine or methamphetamine (200 grams or more) (Count 1), one count of unlawful possession of a listed chemical (anhydrous ammonia) (Count 2), another count of unlawful possession of a listed chemical (hydrochloric acid gas) (Count 3), and one count of possession of drug paraphernalia (Count 4) (Ex. B). Petitioner signed a written Plea Entry and Sentence Recommendation, pursuant to which he agreed to enter a guilty plea to the charges in exchange for the following sentences:

> Count 1:  mandatory minimum term of fifteen (15) years in prison;
> Count 2:  five (5) years in prison, to run concurrently with Count 1;
> Count 3:  five (5) years in prison, to run concurrently with Counts 1 and 2;
> Count 4:  time served.

---

[1] Hereinafter all citations to the state court record refer to the exhibits submitted with Respondent's answer (ECF No. 21).  If a cited page has more than one page number, the court cites to the "Bates stamp" page number.

(Ex. C).  After conducting a colloquy, the trial court accepted Petitioner's guilty plea and sentenced him in accordance with the plea agreement (Exs. D, E).

Petitioner, through counsel, appealed the judgment to the Florida First District Court of Appeal ("First DCA"), Case No. 1D13-1597 (Ex. G).  Petitioner's counsel filed a brief, pursuant to Anders v. California, 386 U.S. 738 (1967), asserting that there were no meritorious arguments to support the contention that reversible error occurred in the trial court (Ex. G).  Petitioner filed a pro se initial brief (Ex. I).  The First DCA affirmed the judgment per curiam without written opinion on February 5, 2014, with the mandate issuing March 27, 2014 (Ex. K).  Thurber v. State, 133 So. 3d 934 (Fla. 1st DCA 2014) (Table).

On October 25, 2014, Petitioner filed a counseled motion for post-conviction relief, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure, in the state circuit court (Ex. M).   The state circuit court summarily denied the motion on February 26, 2015 (Ex. N).  Petitioner appealed the decision to the First DCA, Case No. 1D15-1577 (Ex. P).  The First DCA affirmed the decision per curiam without written opinion on May 20, 2015, with the mandate issuing July 15, 2015 (Ex. T).  Thurber v. State, 166 So. 3d 776 (Fla. 1st DCA 2015) (Table).

Petitioner filed the instant federal habeas action on September 3, 2015 (ECF No. 1).

On September 29, 2015, Petitioner filed a second Rule 3.850 motion in the state circuit court (Ex. V).  The circuit court denied the motion as successive (Ex. W). Petitioner appealed the decision to the First DCA, Case No. 1D15-5069 (*see* Ex. X). The First DCA affirmed the decision per curiam without written opinion on February 11, 2016, with the mandate issuing March 8, 2016 (Ex. Y).  Thurber v. State, 184 So. 3d 524 (Fla. 1st DCA 2016) (Table).

II.     STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States.  As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub.L. 104-132, § 104, 110 Stat. 1214, 1218–19.  In relevant part, section 2254(d) now provides:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be

granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[2] The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the

---

[2] Unless otherwise noted, references to Williams are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

> "unreasonable application" clause, a federal habeas court may grant the
> writ if the state court identifies the correct governing legal principle from
> this Court's decisions but unreasonably applies that principle to the facts
> of the prisoner's case.

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring); Ramdass v. Angelone, 530 U.S. 156, 120 S. Ct. 2113, 147 L. Ed. 2d 125 (2000).  In employing this test, the Supreme Court has instructed that on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision."  Lockyer v. Andrade, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).  "Clearly established Federal law, includes only the holdings, as opposed to the dicta, of the Supreme Court's decisions."  Woods v. Donald, — U.S. —, 135 S. Ct. 1372, 1376, 191 L. Ed. 2d 464 (2015) (citation omitted).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives

at a result different from [Supreme Court] precedent.'" <u>Lockyer</u>, 538 U.S. at 73 (quoting <u>Williams</u>, 529 U.S. at 405–06).  The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." <u>Early v. Packer</u>, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002) (quoting <u>Williams</u>, 529 U.S. at 405–06).  If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.  However, where there is no Supreme Court precedent on point, the state court's conclusion cannot be contrary to clearly established federal law.  <i>See</i> <u>Woods</u>, 135 S. Ct. at 1377 (holding, as to claim that counsel was per se ineffective in being absent from the courtroom for ten minutes during testimony concerning other defendants:  "Because none of our cases confront the specific question presented by this case, the state court's decision could not be contrary to any holding from this Court." (internal quotation marks and citation omitted)).

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether

the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable."  Williams, 529 U.S. at 409.  Whether a State court's decision was an unreasonable application of a legal principle must be assessed in light of the record the court had before it.  Holland v. Jackson, 542 U.S. 649, 652, 124 S. Ct. 2736, 159 L. Ed. 2d 683 (2004) (per curiam); cf. Bell v. Cone, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).  "In determining whether a state court's decision represents an unreasonable application of clearly established federal law, a federal court conducting habeas review 'may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable.'" Gill v. Mecusker, 633 F.3d 1272, 1287 (11th Cir. 2011) (quoting Williams, 529 U.S. at 411) (citing Harrington v. Richter, 562 U.S. 86, 103, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011)).  The AEDPA's "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it.  See Gill, supra at 1291

(citing Richter).  Under § 2254(d), a habeas court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court. *See* Richter, 562 U.S. at 102; *see also* Gill, *supra,* at 1292 (the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding."

Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003)

(dictum).

 When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence."   28 U.S.C. § 2254(e)(1); *see, e.g.,* Miller-El, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); Jones v. Walker, 469 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact.").   The "unreasonable determination of the facts" standard is only implicated to the extent that the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See* Gill, 633 F.3d at 1292.  A petitioner is not entitled to relief unless he demonstrates by

clear and convincing evidence that the record reflects an insufficient factual basis for affirming the state court's decision.  *Id.*

Only if the federal habeas court finds that the petitioner satisfied § 2254(d) does the court take the final step of conducting an independent review of the merits of the petitioner's claims.  *See* <u>Panetti v. Quarterman</u>, 531 U.S. 930, 953, 127 S. Ct. 2842, 168 L. Ed. 2d 662 (2007); <u>Jones</u>, 469 F.3d 1216 (same).  The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States."  28 U.S.C. § 2254(a).

## III.   EXHAUSTION AND PROCEDURAL DEFAULT

It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, *see* 28 U.S.C. § 2254(b)(1), thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights."  <u>Duncan v. Henry</u>, 513 U.S. 364, 365, 115 S. Ct. 887, 888, 130 L. Ed. 2d 865 (1995) (quoting <u>Picard v. Connor</u>, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)).  To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim.  <u>Duncan</u>,

513 U.S. at 365–66; <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); <u>Picard</u>, 404 U.S. at 277–78.

The Supreme Court has provided lower courts with guidance for determining whether a habeas petitioner has met the "fair presentation" requirement.  In <u>Picard v. Connor</u>, the Court held that, for purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief.  404 U.S. at 277.  In announcing that "the substance of a federal habeas corpus claim must first be presented to the state courts," *id.*, 404 U.S. at 278, the Court rejected the contention in that case that the petitioner satisfied the exhaustion requirement by presenting the state courts only with the facts necessary to state a claim for relief.

Additionally, the Court has indicated that it is not enough that a petitioner make a general appeal to a constitutional guarantee as broad as due process to present the "substance" of such a claim to a state court.  <u>Anderson v. Harless</u>, 459 U.S. 4, 103 S. Ct. 276, 74 L. Ed. 2d 3 (1982).  In <u>Anderson</u>, the habeas petitioner was granted relief by the Sixth Circuit Court of Appeals on the ground that a jury instruction violated due process because it obviated the requirement that the prosecutor prove all the elements of the crime beyond a reasonable doubt.  459 U.S. at 7 (citing <u>Sandstrom v.</u>

Montana, 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979)).  The only manner in

which the habeas petitioner cited federal authority was by referring to a state court

decision in which "the defendant . . . asserted a broad federal due process right to jury

instructions that properly explain state law."  Anderson, 459 U.S. at 7.  The Court

expressed doubt that a defendant's citation to a state-court decision predicated solely

on state law was sufficient to fairly apprise a reviewing court of a potential federal

claim merely because the defendant in the cited case advanced a federal claim.  *Id.*,

459 U.S. at 7 & n.3.  Furthermore, the Court clarified that such a citation was

obviously insufficient when the record satisfied the federal habeas court that the

federal claim asserted in the cited case was not the same as the federal claim on which

federal habeas relief was sought.  *Id.*

Years later, the Supreme Court readdressed the "fair presentation" requirement

in Duncan v. Henry, 513 U.S. 364.  The Duncan Court strictly construed the

exhaustion requirement so as to mandate that, if state and federal constitutional law

overlap in their applicability to a petitioner's claim, the petitioner must raise his issue

in terms of the applicable federal right in state court in order to obtain federal review

of the issue.[3]  The Supreme Court explained, "[i]f a habeas petitioner wishes to claim

---

[3] The petitioner in Duncan raised a federal due process claim in his habeas petition, but had
raised only a state constitutional claim in his state appeal.  Presented with a state constitutional

that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal, but in state court." Duncan, 513 U.S. at 365–66.  More recently, the Supreme Court again focused upon the requirement of "fair presentation," holding that "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." Baldwin v. Reese, 541 U.S. 27, 124 S. Ct. 1347, 1351, 158 L. Ed. 2d 64 (2004).  In Baldwin, the Supreme Court recognized that "[a] litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" Id., 541 U.S. at 32.  This language, while not part of the Court's holding, provides helpful instruction.  With regard to this language, the Eleventh Circuit explained in McNair v. Campbell, 416 F.3d 1291 (11th Cir. 2005):

> If read in a vacuum, this dicta might be thought to create a low floor indeed for petitioners seeking to establish exhaustion.  However, we

claim, the state court applied state law in resolving the appeal.  513 U.S. at 366.

agree with the district court that this language must be "applied with common sense and in light of the purpose underlying the exhaustion requirement[:] 'to afford the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary.'" McNair [v. Campbell], 315 F. Supp. 2d at 1184 (quoting Vasquez v. Hillery, 474 U.S. 254, 257, 106 S. Ct. 617, 620, 88 L. Ed. 2d 598 (1986)). This is consistent with settled law established by the Supreme Court. . . . We therefore hold that "'[t]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.'"

416 F.3d at 1302-03 (citations omitted).[4]

The Eleventh Circuit, prior to Duncan, had broadly interpreted the "fair presentation" requirement. After Duncan, however, the Eleventh Circuit has taken a more narrow approach. For example, in Zeigler v. Crosby, the court held that the habeas petitioner failed to "fairly present" his juror misconduct claims to the state courts where his brief to the state appellate court did not refer to the federal constitutional issues raised in his federal habeas petition, and none of the cases cited in his direct appeal discussed the United States Constitution. 345 F.3d 1300, 1307

---

[4] In his initial brief before the Court of Criminal Appeals, McNair cited one federal case in a string citation containing other state cases, and in a closing paragraph in his argument that extraneous materials were considered by the jury during deliberations, stated that there was a violation of his rights "protected by the Fifth, Sixth, Eighth[,] and Fourteenth Amendments to the United States Constitution, the Alabama Constitution[,] and Alabama law." McNair v. Campbell, 416 F.3d 1291, 1303 (11th Cir. 2005). The court found that these references to federal law were not sufficient to meet the fair presentment requirement and noted that it was important that the petitioner had never mentioned the federal standards regarding extraneous materials in his brief, but relied on state law for his arguments. Id.

(11th Cir. 2003).  The Eleventh Circuit specifically noted that the section of the petitioner's appellate brief which dealt with juror misconduct contained the words: "Appellant was denied due process and a fair trial. . . .," which could be interpreted as asserting a fair trial claim under the Due Process Clause of the Florida Constitution. *Id.* at 1308 n.5.  The only cases cited in the discussion of the issue in petitioner's state appellate brief were state supreme court cases that made no mention of the United States Constitution and cited no federal cases.  The court concluded that petitioner's "[c]ursory and conclusional sentence (unaccompanied by citations to federal law), . . . did not present to the Florida courts the federal claim asserted to us."  *Id.*

An issue that was not properly presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, that is, procedurally barred from federal review.  *See* O'Sullivan, 526 U.S. at 839–40, 848; Bailey v. Nagle, 172 F.3d 1299, 1302–03 (11th Cir. 1999).  This court will also consider a claim procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default.  *See* Coleman v. Thompson, 501 U.S. 722, 734–35 & n.1, 111 S. Ct. 2546, 2555 & n.1, 115 L. Ed. 2d 640 (1991); Caniff v. Moore, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be

addressed by federal courts."); Chambers v. Thompson, 150 F.3d 1324, 1326–27 (11th Cir. 1998) (applicable state procedural bar should be enforced by federal court even as to a claim which has never been presented to a state court); *accord* Tower v. Phillips, 7 F.3d 206, 210 (11th Cir. 1993); Parker v. Dugger, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L. Ed. 2d 812 (1991).  In the first instance, the federal court must determine whether any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine.  Bailey, 172 F.3d at 1303.  In the second instance, a federal court must determine whether the state's procedural default ruling rested on adequate state grounds independent of the federal question.  *See* Harris v. Reed, 489 U.S. 255, 109 S. Ct. 1038, 1043, 103 L. Ed. 2d 308 (1989).  The adequacy of a state procedural bar to the assertion of a federal question is itself a federal question.  Lee v. Kemna, 534 U.S. 362, 122 S. Ct. 877, 885, 151 L. Ed. 2d 820 (2002).  The adequacy requirement has been interpreted to mean that the rule must be "firmly established and regularly followed," Siebert v. Allen, 455 F.3d 1269, 1271 (11th Cir. 2006), that is, not applied in an "arbitrary or unprecedented fashion," Judd v. Haley, 250 F.3d 1308,1313 (11th Cir. 2001), or in a manifestly unfair manner.  Ford v. Georgia, 498 U.S. 411, 424–25,

111 S. Ct. 850, 858, 112 L. Ed. 2d 935 (1991); <u>Upshaw v. Singletary</u>, 70 F.3d 576, 579 (11th Cir. 1995).

The Eleventh Circuit has set forth a three-part test to determine whether a state court's procedural ruling constitutes an independent and adequate state rule of decision. <u>Judd v. Haley</u>, 250 F.3d 1308, 1313 (11th Cir. 2001). First, the last state court rendering judgment must clearly and expressly state it is relying on state procedural rules to resolve the federal claim.[5] Second, the state court's decision on the procedural issue must rest entirely on state law grounds and not be intertwined with an interpretation of federal law. Third, the state procedural rule must be adequate. *Id.* The adequacy requirement has been interpreted to mean the rule must be firmly established and regularly followed, that is, not applied in an arbitrary or unprecedented fashion. *Id.*

To overcome a procedural default such that the federal habeas court may consider the merits of a claim, the petitioner must show cause for the default and prejudice resulting therefrom or a fundamental miscarriage of justice. <u>Tower</u>, 7 F.3d at 210; <u>Parker</u>, 876 F.2d 1470. "For cause to exist, an external impediment, whether

---

[5] The federal court should honor the procedural bar even if the state court alternatively reviewed the claim on the merits. <u>Marek v. Singletary</u>, 62 F.3d 1295, 1302 (11th Cir. 1995); <u>Alderman v. Zant</u>, 22 F.3d 1541, 1549 (11th Cir. 1994).

it be governmental interference or the reasonable unavailability of the factual basis for

the claim, must have prevented petitioner from raising the claim." McCleskey v. Zant,

499 U.S. 467, 497, 111 S. Ct. 1454, 1472, 113 L. Ed. 2d 517 (1991) (quoting Murray

v. Carrier, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L. Ed. 2d 397 (1986)).

Within this framework, the court will review Petitioner's claims.

## IV.   PETITIONER'S CLAIMS

A.   Ground One:  "The trial court's summary denial of Ground Two of Petitioner's 3.850 motion and the appellate court's per curiam affirmance on direct appeal resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law and/or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."

Petitioner alleges the arrest report from the Escambia County Sheriff's Office

stated that on July 16, 2012, officers found three separate containers of suspected

"meth oil" (two "One-Pot" containers found in the freezer and a Pyrex measuring cup

found in a dresser drawer) and tested each container separately for the presence of

anhydrous ammonia, which yielded positive results (ECF No. 1 at 7–11; ECF No. 2

at 2–7).[6]  Petitioner alleges the arrest report did not indicate that the officers tested

---

[6] According to the arrest report, a "One Pot" is the term used to describe a step during the methamphetamine manufacturing process when the manufacturer or the "cook" utilizes a plastic bottle and combines several chemicals including ammonium nitrate, lithium metal (batteries), Acid (drain cleaner), pseudoephedrine, water, and an organic solvent (Coleman fuel or Ether) together and shakes the mixture (see Ex. A).  The mixture of these chemicals creates a chemical reaction that produces a methamphetamine mixture referred to as methamphetamine oil (see id.).

each container separately for the presence of <u>methamphetamine</u> (*id.*).   Petitioner

alleges the officers then commingled the contents of the containers and tested the

mixture for the presence of methamphetamine, which yielded a positive result (*id.*).

Petitioner alleges the facts set forth in the arrest report were the factual basis for his

guilty plea, on March 12, 2013 (*id.*).   He alleges the quantities/weights of

methamphetamine stated in the arrest report differed significantly from the

quantities/weights of methamphetamine reported in a laboratory report from the

Florida Department of Law Enforcement ("FDLE"), dated August 14, 2012 (*id.*).

Petitioner alleges that under Florida law, where separate containers of suspected

narcotics pose a reasonable risk of misidentification, each container must first be

tested for the presence of illegal drugs before the contents are commingled to

determine the total weight for purposes of Florida's drug trafficking statutes (ECF No.

1 at 9; ECF No. 2 at 4–7) (citing <u>Greenwade v. State</u>, 124 So. 3d 215 (Fla. 2013) and

<u>Ross v. State</u>, 528 So. 2d 1237 (Fla. 3d DCA 1988)).   Petitioner alleges that in his

case, the officers failed to test each of the three containers for the presence of

methamphetamine prior to commingling the contents (*id.*).   Petitioner alleges when

such impermissible commingling occurs without prior individual testing, Florida law

provides that the proper remedy is to remand the case for prosecution for simple possession (*id.*).

Petitioner contends defense counsel was ineffective for failing to file a motion to dismiss the trafficking charge, based upon the impermissible commingling, and failing to inform Petitioner that the "commingling" defense was a viable defense, prior to entry of Petitioner's guilty plea (ECF No. 1 at 9–10; ECF No. 2 at 2–7).

Respondent asserts that it appears Petitioner exhausted this claim of ineffective assistance of trial counsel ("IATC") by presenting it to the state courts in his Rule 3.850 motion and his appeal of the circuit court's denial of the motion (ECF No. 21 at 18, 21 & n.3).   Respondent also agrees with Petitioner that the state court adjudicated the claim on the merits (*id.* at 21).  Respondent contends the state court's adjudication of Petitioner's claim was not based upon an unreasonable determination of the facts, nor was it contrary to or an unreasonable application of clearly established federal law (*id.* at 22–30).  Respondent argues that the controlling Florida law at the time Petitioner entered his guilty plea on March 22, 2013, was <u>Greenwade v. State</u>, 80 S. 3d 371 (Fla. 1st DCA 2012) ("<u>Greenwade I</u>"), which held that a defendant was not entitled to a judgment of acquittal on cocaine trafficking charges because the State combined, tested, and weighed the contents of nine small bags found in the

defendant's possession without first testing each bag separately for cocaine (*id.*). Respondent contends Petitioner's trial counsel cannot be deemed ineffective for failing to anticipate the Florida Supreme Court's reversal of Greenwade I on October 17, 2013 in Greenwade v. State, 124 So. 3d 215 (Fla. 2013) ("Greenwade II") (*id.*). Respondent further argues that this federal court may not consider the FDLE lab report which Petitioner attached to his § 2254 petition, because the report was not part of the state court record (*see id.* at 27 n.4).

1.    Clearly Established Federal Law

A defendant's Sixth Amendment right to counsel extends to the plea-bargaining process. Lafler v. Cooper, — U.S. —, 132 S. Ct. 1376, 1384, 182 L. Ed. 2d 398 (2012) (citing Missouri v. Frye, — U.S. —, 132 S. Ct. 1399, 1404, 182 L. Ed. 2d 379 (2012), and McMann v. Richardson, 397 U.S. 759, 771, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970)).  "If a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it." Lafler, 132 S. Ct. at 1387. The two-part test articulated in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984) applies to claims that counsel was ineffective during the plea process. Lafler, 132 S. Ct. at 1384 (applying Strickland's two-part test to federal habeas petitioner's claim that counsel was ineffective for advising him to

reject a plea offer); Frye, 132 S. Ct. at 1404, 1409–10 (applying Strickland's two-part

test to federal habeas petitioner's claim that counsel was ineffective for failing to

communicate a prosecution plea offer before it lapsed); Hill v. Lockhart, 474 U.S. 52,

48, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985) (applying Strickland's two-part test to

defendant's challenge to his guilty plea based on ineffective assistance of counsel).


Strickland's first prong requires a defendant to show "'that counsel's

representation fell below an objective standard of reasonableness.'" Hill, 474 U.S. at

57 (quoting Strickland, 466 U.S. at 688).  The focus of inquiry under the performance

prong of the Strickland standard is whether counsel's assistance was "reasonable

considering all the circumstances." Strickland, 466 U.S. at 691. The Supreme Court

warned about second-guessing professional judgments made by counsel:

> [T]he decision to plead guilty before the evidence is in frequently
> involves the making of difficult judgments.  All the pertinent facts
> normally cannot be known unless witnesses are examined and
> cross-examined in court.  Even then the truth will often be in dispute.  In
> the face of unavoidable uncertainty, the defendant and his counsel must
> make their best judgment as to the weight of the State's case.  Counsel
> must predict how the facts, as he understands them, would be viewed by
> a court . . . .  Questions like these cannot be answered with certitude; yet
> a decision to plead guilty must necessarily rest upon counsel's answers,
> uncertain as they may be.  Waiving trial entails the inherent risk that the
> good-faith evaluations of a reasonably competent attorney will turn out
> to be mistaken either as to the facts or as to what a court's judgment

> might be on given facts.  That a guilty plea must be intelligently made is
> not a requirement that all advice offered by the defendant's lawyer
> withstand retrospective examination in a post-conviction hearing.

McMann, 397 U.S. at 769–70.

In a plea situation, counsel must provide advice "within the range of competence demanded of attorneys in criminal cases."  Hill, 474 U.S. at 56–57 (quoting McMann, 397 U.S. at 771).  Under this standard, representation is ineffective only if counsel commits "serious derelictions" of his duty when advising the accused.  Stano v. Dugger, 921 F.2d 1125, 1150–51 (11th Cir. 1991).  Absent such blatant errors, however, the court should "indulge a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance."  Yordan v. Dugger, 909 F.2d 474, 477 (11th Cir. 1990).  The Eleventh Circuit has commented that "[t]he right to competent plea bargain advice is at best a privilege that confers no certain benefit," because a defendant "may make a wise decision" without assistance of counsel or a "bad one despite superior advice from his lawyer."  Wofford v. Wainwright, 748 F.2d 1505, 1508 (11th Cir. 1984) (per curiam).  "[C]ounsel owes a lesser duty to a client who pleads guilty than to one who decides to go to trial, and in the former case counsel need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious

choice between [entering a plea] and going to trial." *Id.* This requires counsel to "offer his informed opinion as to the best course to be followed" and impart "a general knowledge of the possible legal consequences of facing trial" to the defendant. *Id.* Therefore, a defendant's failure to "correctly assess every relevant factor entering into his decision" does not undermine a validly entered guilty plea. *Id.* at 1509.

Strickland's second prong requires a defendant to show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. In the context of pleas, "[t]he . . . 'prejudice' requirement . . . focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." Hill, 474 U.S. at 59.

When a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. Strickland, 466 U.S. at 698; Collier v. Turpin, 177 F.3d 1184, 1197 (11th Cir. 1999). "Surmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010). "Establishing that a state court's application of Strickland was

unreasonable under § 2254(d) is all the more difficult." <u>Richter</u>, 131 S. Ct. at 788. As

the <u>Richter</u> Court explained:

> The standards created by <u>Strickland</u> and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The <u>Strickland</u> standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under <u>Strickland</u> with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard.

*Id.* (citations omitted).

### 2. Federal Review of State Court Decision

Petitioner raised this IATC claim as Ground Two in his Rule 3.850 motion (Ex.

M at 23–28). He alleged that according to the arrest report, two "Shake and Bake"

bottles recovered from the freezer were tested and determined to contain anhydrous

ammonia (*id.* at 23).[7] Petitioner alleged that after this test, the contents of both "Shake

and Bake" bottles and presumably the content of the Pyrex measuring cup were

commingled in a separate container and then tested with an "NIC" test, which yielded

a positive result for the presence of methamphetamine (*id.*). Petitioner alleged that the

quantities/weights of the commingled solution were not verified by the August 14,

---

[7] The terms "One-Pot" and "Shake and Bake" are used interchangeably in the arrest report (*see* Ex. A).

2012 FDLE lab report, and they differed significantly from the quantities/weights recovered during the search (*id.*). Petitioner acknowledged that the three separate containers were field tested for anhydrous ammonia, but he argued that before the contents were commingled and tested for methamphetamine, there was no indication in the arrest report that each of the containers was individually tested for any methamphetamine manufacturing precursor chemical other than ammonia (*id.* at 26–27). Petitioner alleged that if defense counsel had filed a motion to dismiss and advised him of the "commingling" defense, he would not have entered a guilty plea and instead would have insisted on going to trial based on the improper aggregation of the weight of the methamphetamine (*id.* at 28).

Petitioner argued to the state court that a strong factual argument existed for dismissal of the trafficking count, because the evidence supported only a charge of simple possession or at most, trafficking in 14–200 grams (Ex. M at 27–28). Petitioner acknowledged that at the time of his plea, the First DCA in Greenwade I failed to reverse a conviction for trafficking 200–400 grams of cocaine, despite the State's admission that they commingled the contents of Greenwade's nine bags of drugs without first testing each bag individually for cocaine (*id.* at 23–25). Petitioner argued that defense counsel should have advised him that he had a viable defense

based upon the reasoning of Ross, which the Florida Supreme Court adopted in

Greenwade II, and should have sought dismissal of the trafficking charge based upon

the commingling argument (*id.* at 23–27).

The state circuit court summarily denied the Rule 3.850 motion (Ex. N).

Petitioner appealed the decision to the First DCA.  The First DCA affirmed the lower

court's decision without written opinion (Ex. T).

The relevant decision for purposes of 28 U.S.C. § 2254 is the First DCA's

summary affirmance, which is the final state court adjudication on the merits of

petitioner's claim.  Wilson v. Warden, Ga. Diagnostic Prison, 834 F.3d 1227, 1235

(11th Cir. 2016) (defining the relevant decision for purposes of § 2254 review as the

state appellate court's summary affirmance of the lower tribunal's decision), *petition*

*for cert. filed*, No. 16-6855 (U.S. Nov. 15, 2016).  Where, as here, "the last

adjudication on the merits provides no reasoned opinion, federal courts review that

decision using the test announced in Richter."  Wilson at 1235.  The Richter test

provides that "[w]here a state court's decision is unaccompanied by an explanation,"

a petitioner's burden under section 2254(d) is to "show[ ] there was no reasonable

basis for the state court to deny relief."  Richter, 562 U.S. at 98.  "[A] habeas court

must determine what arguments or theories supported or, as here, could have

supported, the state court's decision; and then it must ask whether it is possible

fairminded jurists could disagree that those arguments or theories are inconsistent with

the holding in a prior decision of [the] Court." *Id.* at 102.

Here, under the <u>Richter</u> test, Petitioner must establish there was no reasonable

basis for the First DCA to affirm the denial of relief on his IATC claim.  In reviewing

the reasonableness of the First DCA's decision, this court may, but is not required to,

look to the reasoning of the state court below (the state circuit court).  The Eleventh

Circuit explained in <u>Wilson</u>:

> When the reasoning of the state trial court was reasonable, there is
> necessarily at least one reasonable basis on which the state [appellate]
> court could have denied relief and our inquiry ends.  In this way, federal
> courts can use previous opinions as evidence that the relevant state court
> decision under review is reasonable.  But the relevant state court decision
> for federal habeas review remains the last adjudication on the merits, and
> federal courts are not limited to assessing the reasoning of the lower
> court.

834 F.3d at 1239.

The First DCA's rejection of Petitioner's IATC claim could have been based

upon the theory that at the time of Petitioner's plea, the "commingling" defense was

not a viable defense in the jurisdiction where Petitioner was prosecuted.  The state

court record included the arrest report, which Petitioner agreed set forth the factual

basis for his guilty plea (*see* Ex. N).  The arrest report included the following factual

allegations:

> On 07/26/2012 at approximately 1036 hours, members of the Escambia County Sheriff's Office Narcotics Unit and I [Deputy Brett Thomas McCormack] served a lawful Search Warrant at 1509 Heinrich Street, Escambia County, Florida.

> Upon arrival, I conducted a knock and announce by saying "Sheriff's Office, search warrant" loud three times.  After no answer at the door, entry was made into the residence by members of the Narcotics Unit.   After entry was made, the residence was secured and S[uspect]/Jacob Andrew Thurber Sr., S/Carrie Ann Thurber, and S/Tisha Strickland were detained in the residence.  As we entered the residence I could smell an odor that would be consistent of a methamphetamine lab.  During the securing of the residence, items where located in the residence that are consistent with a methamphetamine lab.  Due to the odor and the items located everyone was removed form the residence for their safety.

> I read the contents of the search warrant to all persons present.

> Investigator Tolbirt #214 and Investigator Gilmore #349 donned protective gear and re-entered the residence.  Before re-entering, S/Jacob Thurber advised them that there was [sic] two "One-Pot" methamphetamine labs in the freezer and further advised the location for other hazardous materials.  Investigator Tolbirt #214 and Investigator Gilmore #349 removed the hazardous material and the two "One-Pots" and placed them at a safe distance.

> A "One Pot" is the term used to describe a step during the methamphetamine manufacturing process when the manufacturer or the "cook" utilizes a plastic bottle and combines several chemicals including

ammonium nitrate, lithium metal (batteries), Acid (drain cleaner), pseudoephedrine, water, and an organic solvent (Coleman fuel or Ether) together and shakes the mixture.  The mixture of these chemicals creates a chemical reaction that produces methamphetamine mixture referred to as methamphetamine oil.

During a search of the residence the following items were located:

Receipt located in purse from bedroom.

Packages of lithium batteries on the dresser in the bedroom.

Miscellaneous paperwork.

Pseudoephedrine box with blister packs on the table top in the bedroom.

Sample bottle containing meth oil from "One-Pot" blue cap from the freezer (approximately 112 grams).

Sample bottle containing meth oil from "One-Pot" orange cap from the freezer (approximately 112 grams).

Sample bottle containing meth oil from measuring cup from the dresser drawer in the bedroom (approximately 56 grams).

Blackberry cell phone.

Kyocera cell phone.

Several items were removed and disposed of by Haz-Mat and a seized property receipt was utilized to log all the items.

Investigator Reguindin #225 field tested the "One-Pots" or "Shake and Bakes" using a Drager test tool.  The "One-Pots" or "Shake and Bakes" tested positive for the presents [sic] of anhydrous ammonium.

Anhydrous ammonium is a listed chemical under Florida Statue 893.149.l.a.

Investigator Reguindin #225 removed approximately 280 grams of methamphetamine oil from the two "One-Pots" or "Shake and Bakes" located in the freezer.  Investigator Reguindin #225 field tested the methamphetamine oil with a NIC test kit.  The test yielded a positive result for the presence of methamphetamine.

Located in the attic of the residence were eight (8) "HCL (hydrochloric acid gas) generators".  The eight "HCL (hydrochloric acid gas) generators" were immediately removed and placed at a safe distance from the residence and persons present.

A "HCL (hydrochloric acid gas) generator" or a "gas generator" is the term used to describe a step during the methamphetamine manufacturing process when the manufacturer or the "cook" utilizes a plastic bottle and combines Sodium Chloride (salt) and Acid (sulfuric or muriatic) inside the bottle.  The chemical reaction creates hydrochloric acid gas.  The manufacturer connects a tube or hose to the top of the bottle to direct the hydrochloric acid gas that is released from the bottle through the tube or hose in a specific direction.

Investigator Reguindin #225 field tested the "HCL" generator using a Drager test tool.  The "HCL" generator tested positive for the presence of hydrochloric acid gas.  Hydrochloric Acid gas is a listed chemical 893.149.

. . . .

Investigator Tolbirt #214 and I made contact with S/Jacob Thurber Sr. and advised him of his Miranda Warnings from my department issued card.  S/Jacob Thurber Sr. advised that he understood his rights.  S/Jacob Thurber Sr. stated that be has been cooking meth for about three months.    S/Jacob Thurber Sr. stated that he buys most of his pseudoephedrine himself, but has had people supply him with pseudoephedrine in the past.  S/Jacob Thurber Sr. stated that his wife, S/Carrie Thurber, has purchased a couple of boxes of pseudoephedrine

knowing that he was going to use the pseudoephedrine to manufacture methamphetamine.  S/Jacob Thurber Sr. stated that S/Tisha Strickland has purchased pseudoephedrine and provided it to him knowing that he was going to use the pseudoephedrine to manufacture methamphetamine. S/Jacob Thurber Sr. stated that in exchange he would supply S/Tisha Strickland with methamphetamine.
. . . .
The Escambia County Haz-Mat Unit responded and disposed of all appropriate items.  All other evidence was turned into the evidence custodian.

(Ex. A).

Defense counsel's raising the "commingling" argument (i.e., that the facts alleged in the arrest report could not support a conviction for trafficking in 200 grams or more of methamphetamine, because the three containers were not individually tested to determine the presence of methamphetamine before the contents of all three containers were commingled to determine the presence of methamphetamine) in a motion to dismiss the charges prior to March 12, 2013 (the date Petitioner entered his guilty plea), would not have afforded Petitioner any relief.  The appellate jurisdiction of the trial court where Petitioner was charged was the First DCA.  When Petitioner entered his guilty plea, the Second and Third DCA's had ruled that where the subject substance is contained in separately wrapped packets, the State must establish that each of the subject packets contains the illegal drug which in the aggregate satisfies the weight threshold of the trafficking statute.  *See* <u>Ross v. State</u>, 528 So. 2d 1237

(Fla. 3d DCA 1988); <u>Sheridan v. State</u>, 850 So. 2d 638 (Fla. 2d DCA 2003); <u>Safford v. State</u>, 708 So. 2d 676 (Fla. 2d DCA 1998).  However, the law of the First DCA was that evidence may be sufficient to support a conviction for trafficking even though the State combined, tested, and weighed the contents of separate containers found in a defendant's possession, without first testing each separate container for the presence of any illegal substance.  *See* <u>Greenwade I</u>, 80 So. 3d at 374.[8]  In <u>Greenwade I</u>, the First DCA certified conflict with the Second DCA's decision in <u>Sheridan</u> and <u>Safford</u>, and the Third DCA's decision in <u>Ross</u>.  *Id.*

In ruling on a motion to dismiss in Petitioner's case, the trial court would have been bound to follow <u>Greenwade I</u>.  *See* <u>Pardo v. State</u>, 596 So. 2d 665, 666–67 (Fla. 1992) (Florida trial courts are required to follow the holding of the District Courts of Appeal, and the proper hierarchy of decisional holdings demands that in the event the only case on point on a district level is from a district other than the one in which the

---

[8] Greenwade argued on direct appeal of his conviction that the trial court erred in denying his motion for judgment of acquittal on his cocaine trafficking charge because the State  combined, tested and weighed the contents of nine small bags found in his possession instead of testing each bag for cocaine before commingling and weighing their contents.  80 So. 3d at 371.  The First DCA affirmed the conviction on the ground that the other evidence (including, Greenwade's admission to officers that a green bag, which contained nine individual baggies of white powder, contained cocaine, and "tools of the drug trade" were on and near the green bag (on top of the green bag was a spoon with cocaine residue on it, and on the table beside the bag was a digital scale) together with a positive chemical test performed by the FDLE lab on the commingled powder from the baggies, was sufficient to sustain the cocaine trafficking conviction.  *Id.* at 374.

trial court is located, the trial court is required to follow that decision; alternatively, <u>if the district court of the district in which the trial court is located has decided the issue, the trial court is bound to follow it</u>.).[9]  Under <u>Greenwade I</u>, the court could not have properly dismissed the trafficking charge on the ground that the State failed to individually test each of the three containers for the presence of methamphetamine prior to commingling the contents and testing and weighing the commingled contents. Further, defense counsel's failure to advise Petitioner, prior to entry of Petitioner's guilty plea on March 12, 2013, that a "commingling" defense was viable, was not unreasonable in light of the state of the law in the First DCA at that time.  Defense counsel's failure to accurately predict how the Florida Supreme Court would decide <u>Greenwade II</u>, or "hedge every bet in the hope of a favorable development," does not satisfy the deficient-performance prong of the <u>Strickland</u> standard.  <u>Rambaran v. Sec'y, Dep't of Corr.</u>, 821 F.3d 1325, 1331–34 (11th Cir. 2016) ("No holding of the Supreme Court clearly establishes that in order to perform within the 'wide range of

---

[9] The location of the trial court distinguishes this case from <u>Bellizia v. Fla. Dep't of Corr.</u>, 614 F.3d 1326 (11th Cir. 2010).  In <u>Bellizia</u>, the Eleventh Circuit affirmed the district court's grant of habeas relief on Bellizia's claim that his trial counsel was ineffective for failing to move for a judgment of acquittal based upon the insufficiency of the State's evidence, pursuant to <u>Ross</u>.  *Id.* at 1328.  However, Bellizia was convicted in a trial court in Miami-Dade County, *see id.* at 1328, which is located in the jurisdiction of the Third DCA.  The trial court in <u>Bellizia</u> would thus have been required to follow the Third DCA's decision is <u>Ross</u> in ruling on a motion for judgment of acquittal, and would have granted the motion.

reasonable professional assistance,' counsel must accurately predict how the law will turn out or hedge every bet in the hope of a favorable development.") (quoting Strickland, 466 U.S. at 689).

Petitioner failed to demonstrate that the First DCA's denial of his IATC claim was unreasonable under Strickland.  Therefore, he is not entitled to federal habeas relief on Ground One.[10]

B.   Ground Two:  "The trial court's summary denial of Ground One of Petitioner's 3.850 and the appellate court's affirmance of appeal resulted in a decision that was contrary to, or involved an unreasonable applications of, clearly established federal law and/or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."

Petitioner alleges the FDLE report listed the combined weight of methamphetamine seized from his residence as 219.7 grams, but in determining and reporting the weight, the FDLE equated the unusable and "inconsumable" solution,

---

[10] Even if the court "looked through" the First DCA's decision and reviewed the reasoning of the circuit court, and even if the court determined that the circuit court's decision was not entitled to deference (for example, because it was based upon the unreasonable factual finding that both of the "One Pots" recovered from the freezer tested positive for the presence of methamphetamine prior to the officers' commingling the contents and testing for methamphetamine, and the court cited the arrest report for this fact (see Ex. N), but the arrest report actually stated that the "One Pots" tested positive for the presence of anhydrous ammonium prior to the officers' commingling the contents (Ex. A at 5)), Petitioner would not be entitled to federal habeas relief.  Upon de novo review of Petitioner's IATC claim, Petitioner failed to satisfy Strickland in light of the state of the law in the trial court at the time defense counsel could have filed a motion to dismiss and at the time counsel advised Petitioner regarding the plea.

or "meth oil," with the weight of the methamphetamine (ECF No. 1 at 12–14; ECF No. 2 at 8–14).  Petitioner alleges the FDLE did not perform any quantitative analysis of the tested solution to determine either the actual weight of the finished methamphetamine, or the percentage of methamphetamine that was actually present in the solution (*id.*).  Petitioner contends defense counsel should have filed a motion to dismiss the trafficking charge on the ground that the State included unusable, unmarketable meth oil to satisfy the weight threshold for the trafficking charge, instead of following the "market oriented approach" described by the Supreme Court in Chapman v. United States, 500 U.S. 453, 111 S. Ct. 1919, 114 L. Ed. 2d 524 (1991), under which the total weight of what is distributed, not just the net weight of the active component, is used to determine the length of a defendant's sentence (ECF No. 2 at 9–11).  Petitioner further contends defense counsel should have advised him, prior to entry of his guilty plea, that this was a viable defense to the trafficking charge (*id.*).  Petitioner acknowledges that the First DCA recently rejected his argument in Wilder v. State, 194 So. 3d 1050 (Fla. 1st DCA 2016) (ECF No. 25 at 24–25).

Respondent asserts that it appears Petitioner exhausted this claim by presenting it to the state circuit court as Ground One of his Rule 3.850 motion, and seeking review of the circuit court's decision in the First DCA (ECF No. 21 at 31–34 & n.5).

Respondent contends that in determining that Petitioner's trial counsel was not ineffective, the state court expressly construed Florida law, and this federal court is bound by that construction (*id.* at 34–37).  Respondent contends that based upon the state court's construction of state law, the court reasonably concluded that defense counsel was not ineffective (*id.*).

      1.      Clearly Established Federal Law

The Strickland standard, set forth *supra*, governs this claim.

      2.      Federal Review of State Court Decision

Petitioner raised this claim as Ground One in his Rule 3.850 motion (Ex. M at 6–22).  Petitioner argued that his trial counsel should have filed a motion to dismiss, and advised him of a viable defense, based upon the theory that the "market oriented approach" must be used to determine the total weight of controlled substances, including methamphetamine (*id.*).  Petitioner conceded that no Florida state case from a district court of appeal or the state supreme court had directly addressed whether the toxic by-products produced in the methamphetamine manufacturing process may be weighed and combined with any actual methamphetamine to sustain a trafficking charge (*see id.* at 9), and he conceded that federal circuit courts were divided on the issue of whether production liquids and/or wastewater byproducts in the

methamphetamine manufacturing process may be added to the weight in cases of trafficking (*id.* at 15–17).  Petitioner argued that a federal district court opinion issued after Petitioner entered his guilty plea, United States v. Long, 958 F. Supp. 2d 1334 (M.D. Fla. July 23, 2013) held that where the mixture is merely an unusable toxic waste byproduct, the weight of that mixture may not be included in the methamphetamine drug weight calculation under federal drug statutes and sentencing guidelines (*id.* at 17–18).

In the state circuit court's written decision denying Petitioner's Rule 3.850 motion, the court correctly stated the deficient performance and prejudice prongs of the Strickland standard as the applicable legal standard (Ex. N).  The court cited the language of the drug trafficking statute under which Petitioner was convicted as follows:

> Any person who knowingly sells, purchases, manufactures, delivers, or brings into this state, or who is knowingly in actual or constructive possession of, 14 grams or more of amphetamine, as described in s. 893.03(2)(c) 2., or methamphetamine, as described in s. 893.03(2)(c) 4., **or of any mixture containing amphetamine or methamphetamine**, or phenylacetone, phenylacetic acid, pseudoephedrine, or ephedrine in conjunction with other chemicals and equipment utilized in the manufacture of amphetamine or methamphetamine, commits a felony of the first degree, which felony shall be known as "trafficking in amphetamine," punishable as provided in s. 775.082, s. 775.083, or s. 775.084.

(Ex. N (citing Fla. Stat. § 893.135)).  The court determined that under the statute, a defendant is guilty of trafficking if they possess in excess of 14 grams of methamphetamine or "any mixture" containing methamphetamine (*id.*).  The court additionally determined that the intent of the statute was to punish the "aggregate" amount of the contraband even when combined with other substances (*id.* (citing Fla. Stat. § 893.135(7); State v. Hayes, 720 So. 2d 1095 (Fla. 4th DCA 1998))).

The state circuit court also cited the state law standard for motions to dismiss in criminal cases:

> A motion to dismiss filed pursuant to Fla. R. Crim. P. 3.190(c)(4) tests whether there is a dispute of material fact or whether there exists a legal defense that would summarily decide the case.[FN 4]  When a defendant files a motion seeking a dismissal of the charges against him, the State is entitled to the most favorable construction of the evidence with all inferences being resolved against the defendant.

(Ex. N (citing State v. Nunez, 881So. 2d 658 (Fla. 3d DCA 2004))).  The court concluded a motion to dismiss, had defense counsel made one, would have been denied based on the facts contained in the arrest report (*id.*).  The circuit court attached a copy of the charging information and the arrest report to the order denying the Rule 3.850 motion (*id.*).  The First DCA affirmed the circuit court's summary denial of the Rule 3.850 motion (Ex. T).

Although an ineffective assistance of counsel claim is a federal constitutional claim which the court considers in light of the clearly established law of Strickland, when "the validity of the claim that [counsel] failed to assert is clearly a question of state law, . . . we must defer to the state's construction of its own law." Alvord v. Wainwright, 725 F.2d 1282, 1291 (11th Cir. 1984) (explaining, in the context of an ineffective assistance of appellate counsel claim, that "[o]n the one hand, the issue of ineffective assistance—even when based on the failure of counsel to raise a state law claim—is one of constitutional dimension," but, "[o]n the other hand, the validity of the claim [counsel] failed to assert is clearly a question of state law, and we must defer to the state's construction of its own law.") (citations omitted)[11]; see also Callahan v. Campbell, 427 F.3d 897, 932 (11th Cir. 2005) (holding that defense counsel cannot be deemed ineffective for failing to make a state-law-based objection when the state court has already concluded that the objection would have been overruled under state law; to conclude otherwise would require the federal habeas court to make a determination that the state court misinterpreted state law, which would violate the fundamental principle that federal habeas courts should not second-guess state courts on matters of state law); Herring v. Sec'y Dep't of Corr., 397 F.3d 1338, 1354–55

---

[11] Alvord was superseded by statute on other grounds as noted in Hargrove v. Solomon, 227 F. App'x 806 (11th Cir. 2007).

(11th Cir. 2005) (denying federal habeas relief on ineffective assistance claim based on counsel's failure to make state law-based objection; holding that the Florida Supreme Court's conclusion that the proposed objection would have been overruled was binding and precluded federal habeas relief on the ineffective assistance claim: "The Florida Supreme Court already has told us how the issues would have been resolved under Florida state law had [petitioner's counsel] done what [petitioner] argues he should have done . . . . It is a 'fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters.'") (alterations in original) (quoting Agan v. Vaughn, 119 F.3d 1538, 1549 (11th Cir. 1997)).

Here, as in Alvord, Callahan, and Herring, the state court has already concluded that a motion to dismiss would have been denied under state law; to conclude otherwise would require this federal habeas court to make a determination that the state court misinterpreted state law, which would violate fundamental federal habeas principles.  In light of the state court's determination that a motion to dismiss would not have been granted, the court reasonably concluded that Petitioner's counsel was not ineffective for failing to make one, or for failing to advise Petitioner that he had a viable defense based upon the theory that the 200-plus grams of "meth oil" or liquid

by-product may not be included in calculating the total weight of the methamphetamine.

Indeed, the First DCA's decision in <u>Wilder</u>, issued three years after Petitioner's guilty plea, sets forth the reasons why defense counsel's pursuing a "market oriented approach" would not have been successful:

> Resolution of the issue raised by Wilder begins—and ends—with the plain language of the applicable provisions of section 893.135: subparagraph (1)(f)1. and subsection (6).  *See* <u>Trinidad v. Fla. Peninsula Ins. Co.</u>, 121 So. 3d 433, 439 (Fla. 2013) ("When construing a statute, this Court attempts to give effect to the Legislature's intent, looking first to the actual language used in the statute and its plain meaning."); <u>M.D. v. State</u>, 993 So. 2d 1061, 1063 (Fla. 1st DCA 2008) ("[W]hen a statute is clear and unambiguous, courts will not look behind the statute's plain language for legislative intent, or resort to rules of statutory construction to ascertain intent.").

> Section 893.135(1)(f) 1 provides in pertinent part:

> Any person who knowingly sells, purchases, manufactures, delivers, or brings into this state, or who is knowingly in actual or constructive possession of, *14 grams or more of . . . methamphetamine as described in section 893.03(2)(c)4., or of any mixture[3] containing . . . methamphetamine* . . . in conjunction with other chemicals and equipment utilized in the manufacture of . . . methamphetamine commits a felony of the first degree, which felony shall be known as "trafficking in amphetamine,". . . .

(emphasis added).  And, section 893.135(6) provides in pertinent part:

> For the purpose of clarifying legislative intent regarding the weighing of a mixture containing a controlled substance described in this section, the weight of the controlled substance is the total weight of the mixture, including the controlled substance and any other substance in the mixture.
>
> There is no ambiguity in these statutes.  Section 893.135(1)(f) 1. clearly contemplates the punishment for trafficking of "any" mixture of methamphetamine and does not set a minimum threshold amount of methamphetamine that must be part of the mixture, and section 893.135(6) clearly states that, when a mixture contains a controlled substance, the total weight of the mixture is used, not just the weight of the controlled substance in the mixture.  Accordingly, when these statutes are read together, it is clear that so long as there is some amount—no matter how small—of methamphetamine in the mixture, the weight of the methamphetamine for purposes of the thresholds in the trafficking statute is the total weight of the mixture.

Wilder, 194 So. 3d at 1052–53.

Although the First DCA decided Wilder a year after its decision in Petitioner's post-conviction appeal, and three years after Petitioner entered his plea in March of 2013, there is no reasonable basis to believe that the state court's interpretation of Florida's drug statutes would have been any different if Petitioner's trial counsel had raised the issue in the trial court.

Petitioner failed to show that his trial counsel's failure to raise the "market oriented approach" argument (i.e., that unuseable, toxic, liquid waste by-products must be excluded from the total weight of the drug "mixture" in cases of

methamphetamine trafficking) in a motion to dismiss, and failure to advise Petitioner that it constituted a viable defense to the trafficking charge, constituted ineffective assistance. The First DCA's adjudication of Petitioner's IATC claim was not contrary to or an unreasonable application of <u>Strickland</u>. Therefore, Petitioner is not entitled to federal habeas relief on Ground Two.

C.    <u>Ground Three: "The appellate court's denial on direct appeal of Petitioner's double jeopardy claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law and/or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."</u>

Petitioner claims that his convictions for possession of anhydrous ammonia and trafficking in methamphetamine violate double jeopardy (ECF No. 1 at 15–16; ECF No. 2 at 15–17). He contends the anhydrous ammonia was the "meth oil" that contained the methamphetamine; thus, he was twice convicted for possessing the same liquid (*id.*). Petitioner asserts he presented this claim to the First DCA on direct appeal of his conviction (*id.*).

Respondent asserts that it appears Petitioner exhausted this claim by presenting it to the First DCA on direct appeal (ECF No. 21 at 38–39 & n.6). Respondent contends the state court adjudicated the merits of the claim, and its adjudication was

not contrary to or an unreasonable application of clearly established federal law (*id.* at 39–43).

          1.     Clearly Established Federal Law

"The Double Jeopardy Clause of the Fifth Amendment provides that no person shall be 'subject for the same offence to be twice put in jeopardy of life or limb.'" Jones v. Thomas, 491 U.S. 376, 380, 109 S. Ct. 2522, 105 L. Ed. 2d 322 (1989) (quoting U.S. Const., amend. V)).   In addition to protecting against multiple prosecutions for the same offense, the Clause also prohibits "multiple punishments for the same offense imposed in a single proceeding."   *Id.* 491 U.S. at 381 (internal quotation marks omitted).

In the context of multiple punishments, the purpose of double jeopardy is simply to "ensur[e] that the total punishment did not exceed that authorized by the legislature." *Id.* (quoting United States v. Halper, 490 U.S. 435, 450, 109 S. Ct. 1892, 104 L. Ed. 2d 487 (1989)); Missouri v. Hunter, 459 U.S. 359, 366, 103 S. Ct. 673, 74 L. Ed. 2d 535 (1983) ("[T]he Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended."). Therefore, in enforcing the federal double-jeopardy guarantee, the court "must examine the various offenses for which a person is being punished to determine

whether, as defined by the legislature, any two or more of them are the same offense."

United States v. Dixon, 509 U.S. 688, 745, 113 S. Ct. 2849, 125 L. Ed. 2d 556 (1993).

In effect, the court asks whether the offenses are "sufficiently distinguishable to permit the imposition of cumulative punishment." *Id.*, 509 U.S. at 745 (quotation marks omitted). Where no clear legislative intent has been expressed, the court applies the "same-elements test" of Blockburger, which "inquires whether each offense contains an element not contained in the other; if not, they are the 'same offence' and double jeopardy bars additional punishment and successive prosecution." Dixon, 509 U.S. at 696.

### 2. Federal Review of State Court Decision

Petitioner raised this claim as Issue Two in his initial brief on direct appeal of the judgment of conviction (Ex. I at 17–20). The First DCA affirmed the conviction without written opinion (Ex. K).

Under Florida law, the statutory elements of trafficking in 200 grams or more of methamphetamine are the following:

> (f)1. Any person who knowingly sells, purchases, manufactures, delivers, or brings into this state, or who is knowingly in actual or constructive possession of, 14 grams or more of amphetamine, as described in s. 893.03(2)(c)2., or methamphetamine, as described in s. 893.03(2)(c)4., or of any mixture containing amphetamine or methamphetamine, or phenylacetone, phenylacetic acid,

pseudoephedrine, or ephedrine in conjunction with other chemicals and
equipment utilized in the manufacture of amphetamine or
methamphetamine, commits a felony of the first degree, which felony
shall be known as "trafficking in amphetamine," punishable as provided
in s. 775.082, s. 775.083, or s. 775.084.  If the quantity involved:
. . . .
c. If 200 grams or more, such person shall be sentenced to a mandatory
minimum term of imprisonment of 15 calendar years and pay a fine of
$250,000.

Fla. Stat. § 893.135(1)(f)1.c. (2012).

The statutory elements of unlawful possession of a listed chemical are the

following:

(1) It is unlawful for any person to knowingly or intentionally:

(a) Possess a listed chemical with the intent to unlawfully manufacture
a controlled substance;

(b) Possess or distribute a listed chemical knowing, or having reasonable
cause to believe, that the listed chemical will be used to unlawfully
manufacture a controlled substance.

Fla. Stat. § 893.149(1) (2012).  Florida Statues identify anhydrous ammonia as a

"listed chemical."  *See* Fla. Stat. § 893.033(2)(d).

Even if the trafficking in methamphetamine conviction was based upon the

possession theory of the trafficking statute (as opposed to the sell, purchase,

manufacture, deliver, or "bring into this state" theory), Petitioner's possession of 200

grams or more of methamphetamine (or a mixture of 200 grams or more containing

methamphetamine in conjunction with other chemicals and equipment utilized in the manufacture of methamphetamine (for example, the box of pseudoephedrine and eight hydrochloric acid gas generators found in Petitioner's residence)) did not require identical elements of proof as the offense of possession of anhydrous ammonia. Further, the offenses are not degrees of the same offense, and neither offense is a necessarily lesser included offense of the other. Therefore, the state court did not unreasonably apply Blockburger in concluding that Petitioner's convictions for trafficking in 200 grams or more of methamphetamine and unlawful possession of anhydrous ammonia did not violate the constitutional prohibition against double jeopardy. Accordingly, Petitioner is not entitled to federal habeas relief on Ground Three.

     D.     Ground Four: "Trial counsel's failure to file a motion to suppress evidence based upon inconsistent weights constituted ineffective assistance of counsel and resulted in prejudice (unexhausted claim)."

Petitioner alleges the arrest report stated that law enforcement removed 280 grams of meth oil from his residence (ECF No. 1 at 17–18; ECF No. 2 at 18–21). Petitioner alleges the FDLE report detailed the testing of three containers of liquid submitted by the sheriff's office, and stated that the three containers weighed 78.9 grams, 79.3 grams, and 61.5 grams, respectively, for a total weight of 219.7 grams

(*id.*).   Petitioner contends Florida law holds that inconsistent weights in narcotics

cases are indicative of tampering and subject to suppression (*id.* (citing Davis v. State,

89 So. 3d 1124 (Fla. 2d DCA 2012); Monroe v. State, 13 So. 3d 1083 (Fla. 2d DCA

2009); Dodd v. State, 537 So. 2d 626 (Fla. 3d DCA 1988))).   Petitioner contends trial

counsel was ineffective for failing to seeks suppression of the liquid seized by law

enforcement, on the ground that the inconsistent weights demonstrated evidence

tampering (*id.*).

     Petitioner concedes he did not present this claim to the state courts (ECF No.

1 at 17–18; ECF No. 2 at 18–21).   He contends his failure to exhaust this claim was

caused by ineffective assistance of post-conviction counsel; therefore, he is entitled

to a merits review of his claim pursuant to Martinez v. Ryan, 132 S. Ct. 1309 (2012)

(ECF No. 1 at 18; ECF No. 2 at 17–18, 21; ECF No. 25 at 10).

     Respondent contends the underlying IATC claim, based upon trial counsel's

failure to file a motion to suppress, is not a "substantial" claim; therefore, Petitioner

cannot overcome his procedural default under Martinez (ECF No. 21 at 47–54).

     As previously discussed, a federal court may consider the merits of a

procedurally defaulted claim if the petitioner can show both "cause" for the default

and "prejudice" from a violation of his constitutional right.   Wainwright v. Sykes, 433

U.S. 72, 84–85, 97 S. Ct. 2497, 53 L. Ed. 2d 594 (1977).  To establish cause, a petitioner must ordinarily "demonstrate 'some objective factor external to the defense' that impeded his effort to raise the claim properly in state court."  Ward v. Hall, 592 F.3d 1144, 1157 (11th Cir. 2010) (quoting Murray, 477 U.S. at 488).  Before its 2012 decision in Martinez v. Ryan, the Supreme Court had long held that § 2254 petitioners cannot rely on errors made by their state collateral counsel to establish cause.  *See* Coleman, 501 U.S. at 752–53.  Martinez created a limited, equitable exception to Coleman where, (1) "a State requires a prisoner to raise an ineffective-assistance-of-trial-counsel claim in a collateral proceeding," as opposed to on direct appeal; (2) "appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of Strickland"; and (3) "the underlying ineffective-assistance-of-trial-counsel claim is a substantial one."  Martinez, 132 S. Ct. at 1318–19 (citations omitted).  Accordingly, the petitioner must "establish that his collateral counsel's conduct 'fell below an objective standard of reasonableness,' and that, 'but for counsel's unprofessional errors, the result of the proceeding would have been different.'"  Hittson v. GDCP Warden, 759 F.3d 1210, 1262 (11th Cir. 2014) (quoting Strickland, 466 U.S. at 688).

In Hittson, the Eleventh Circuit explained:

[T]he merits of the underlying claim is only a part of the Strickland analysis.  With unlimited time and the benefit of hindsight, a petitioner can come up with any number of potentially meritorious ineffective-assistance claims that he now wishes his collateral counsel had raised.  However, a petitioner does not establish constitutionally defective performance simply by showing that (a) potentially meritorious claims existed and (b) his collateral counsel failed to raise those claims. Murray, 477 U.S. at 486, 106 S. Ct. at 2644 ("[T]he mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default.").   "Experienced  advocates  since  time  beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues."  Jones v. Barnes, 463 U.S. 745, 751–52, 103 S. Ct. 3308, 3313, 77 L. Ed. 2d 987 (1983).  "[A] per se rule that . . . the professional advocate, [is not] allowed to decide what issues are to be pressed . . . seriously undermines the ability of counsel to present the client's case in accord with counsel's professional evaluation."  *Id.* at 751, 103 S. Ct. at 3313.

As we have explained, Strickland instructs courts to "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance"—that counsel "rendered adequate assistance  and  made  all  significant  decisions  in  the  exercise  of reasonable professional judgment."  466 U.S. at 689–90, 104 S. Ct. at 2065–66.  To overcome this presumption, a petitioner must "establish that no competent counsel would have taken the action that his counsel did take."  Chandler v. United States, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc).

Thus, to show that his habeas counsel failed to provide the level of representation required by Strickland, [the petitioner] must show more than the mere fact they failed to raise potentially meritorious claims; he must show that no competent counsel, in the exercise of reasonable professional judgment, would have omitted those claims.

Hittson, 759 F.3d at 1263 (footnote omitted).

The Eleventh Circuit then explained Martinez's "substantial claim requirement:

> Martinez articulated the "substantial claim" requirement as
> follows:
>
> To overcome the default, a prisoner must . . . demonstrate
> that the underlying ineffective-assistance-of-trial-counsel
> claim is a substantial one, which is to say that the prisoner
> must demonstrate that the claim has some merit. *Cf.*
> Miller–El v. Cockrell, 537 U.S. 322, 123 S. Ct. 1029, 154
> L. Ed. 2d 931 (2003) (describing standards for certificates
> of appealability to issue).

Martinez, — U.S. at —, 132 S. Ct. at 1318–19. Neither Martinez nor
Trevino [v. Thaler, — U.S. —, 133 S. Ct. 1911, 185 L. Ed. 2d 1044
(2013)] elaborated on or applied this standard, but we take the Court's
reference to Miller–El to mean that it intended that lower courts apply
the already-developed standard for issuing a COA, which requires "a
substantial showing of the denial of a constitutional right." 28 U.S.C. §
2253(c)(2).

As the Court explained in Miller–El, "[a] petitioner satisfies this
standard by demonstrating . . . that jurists could conclude the issues
presented are adequate to deserve encouragement to proceed further."
537 U.S. at 327, 123 S. Ct. at 1034. Where a petitioner must make a
"substantial showing" without the benefit of a merits determination by
an earlier court, he must demonstrate that "jurists of reason would find
it debatable whether the petition states a valid claim of the denial of a
constitutional right." Slack v. McDaniel, 529 U.S. 473, 484, 120 S. Ct.
1595, 1604, 146 L. Ed. 2d 542 (2000). That does not mean that a
petitioner must show "that some jurists would grant the petition."
Miller–El, 537 U.S. at 338, 123 S. Ct. at 1040. "[A] claim can be
debatable even though every jurist of reason might agree, after the . . .
case has received full consideration, that petitioner will not prevail." *Id.*

We observe that this standard is similar to the preliminary review conducted by district judges in § 2254 proceedings.  Rule 4 of the § 2254 Rules allows the district judge to summarily dismiss a petition "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief."  The Advisory Committee Notes further instruct that, in keeping with the heightened, fact-pleading requirement in habeas cases, "the petition is expected to state facts that point to a real possibility of constitutional error."  Advisory Committee Note to Rule 4 of the Rules Governing Section 2254 Cases (quotation marks omitted).

Thus, we examine the allegations in . . . the § 2254 petition to see whether "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right."  In making this determination, we consider the fact-pleading requirement for § 2254 petitions, and the standard from <u>Strickland</u>.

<u>Hittson</u>, 759 F.3d at 1269–70 (footnotes omitted).

Petitioner has failed to demonstrate that his post-conviction counsel's failure to include the IATC claim regarding counsel's failure to file a motion to suppress was unreasonable.  Petitioner alleges he instructed Attorney Michael R. Rollo, whom he retained to represent him in the Rule 3.850 proceeding, to include the IATC claim in the Rule 3.850 motion (*see* ECF No. 1 at 17–19).  Petitioner alleges he even provided Attorney Rollo with a memorandum of law explaining this IATC claim (ECF No. 1 at 18; ECF No. 25 at 10), but Rollo "failed" and "declined" and "opted not" to include the claim in the Rule 3.850 motion (ECF No. 1 at 17–19; ECF No. 2 at 21; ECF No. 25 at 10).  Petitioner alleges Rollo "took the easiest route possible by simply typing

verbatim what Petitioner gave him and placing his (postconviction counsel's) name

at the end" (ECF No. 25 at 10).  Petitioner argues, "postconviction counsel's omission

was so great that no competent counsel would have omitted the ground" (ECF No. 1

at 17).

Petitioner's allegation that he instructed Attorney Rollo to include the IATC

claim in the Rule 3.850 motion, and even provided Rollo a memorandum of law

explaining the claim, is belied by Petitioner's allegations in his <u>second</u> Rule 3.850

motion (*see* Ex. V).  In Petitioner's second Rule 3.850 motion, which he filed less than

one month after he filed this § 2254 petition, Petitioner alleged he did not discover the

IATC claim until <u>after the state court denied his first Rule 3.850 motion</u> (*id.* at 2–3).

Petitioner signed his second Rule 3.850 motion, as well as his § 2254 petition, upon

declaring, under penalty of perjury, that the facts stated therein were true (*see* Ex. V

at 30; ECF No. 1 at 21).  Petitioner's presenting false factual allegations to either this

court or the state court undermines the credibility of the factual allegations underlying

his <u>Martinez</u> argument.

Regardless, Petitioner fails to show that Attorney Rollo was ineffective for

failing to include the IATC claim asserted in Ground Four in the Rule 3.850 motion.

To demonstrate that Rollo was ineffective, Petitioner must satisfy the deficient

performance and prejudice prongs of the <u>Strickland</u> standard.  Petitioner must show that (1) no competent post-conviction counsel would have omitted the IATC claim (deficient performance), and (2) there is a reasonable probability that the post-conviction court would have granted relief if Rollo had included the IATC claim in the Rule 3.850 motion (prejudice).

With regard to the prejudice prong, Petitioner must show there is a reasonable probability the post-conviction court would have determined that (1) no competent trial counsel would have forgone the suppression issue, and (2) there is a reasonable probability the trial court would have granted the motion to suppress if trial counsel had made one.  Under Florida law, in seeking to exclude the methamphetamine, Petitioner's trial counsel would have borne the initial burden of demonstrating a probability, not a mere possibility, of tampering.  <u>Murray v. State</u>, 838 So. 2d 1073, 1082 (Fla. 2002) (citing <u>State v. Taplis</u>, 684 So. 2d 214, 215 (Fla. 5th DCA 1996)).  In drug cases, Florida courts have determined that a probability of tampering has been shown where there is a "gross" discrepancy in the drug weights.  *See* <u>Davis v. State</u>, 89 So. 3d 1124, 1125–26 (Fla. 2d DCA 2012) (reversing and remanding for further proceedings on Rule 3.850 claims concerning trial counsel's failure to object to admissibility of drug evidence on grounds of tampering, and counsel's failure to

cross-examine officer on drug evidence, where discrepancy in drug weights (police report showed total weights of suspected marijuana and crack cocaine as 223.4 grams and 4.8 grams, respectively, but results of lab analysis showed 101.0 grams and 0.9 grams) indicated probable tampering); Monroe v. State, 13 So. 3d 1083, 1084–85 (Fla. 2d DCA 2009) (reversing and remanding for further proceedings on Rule 3.850 claims concerning trial counsel's failure to move for judgment of acquittal based on State's failure to establish chain of custody of heroin, and trial counsel's failure to investigate discrepancies in weights of heroin, where discrepancy in drug weights (federal DEA's investigative report indicated that approximately 264 grams of suspected heroin were seized; the State's chemist testified that the contraband registered a net weight of 236.7 grams; and heroin weighed 317.1 grams when the prosecutor received it) indicated probable tampering); Dodd v. State, 537 So. 2d 626, 627–28 (Fla. 3d DCA 1988) (holding that it was error for the trial court to admit cocaine into evidence without first receiving testimony from special agent, who delivered cocaine from an evidence locker to the crime lab, that would explain conflicting descriptions of bag into which seizing officer placed cocaine, and bag delivered to chemist by special agent, and in light of "gross discrepancies" in the recorded weights (seizing officer testified that combined weight of cocaine and container was 317.5 grams when

weighed on postal scale; same officer testified that combined weight was 249.5 grams when weighed on contraband scale; and chemist testified that cocaine, minus its packaging, registered net weight of 220 grams on lab scale).

If Petitioner's trial counsel satisfied the burden of establishing a probability of tampering, the burden would shift to the State to submit evidence that tampering did not occur.  Murray, *supra* (citing Taplis v. State, 703 So. 2d 453, 454 (Fla. 1997) ("[O]nce evidence of tampering is produced, the proponent of the evidence is required to establish a proper chain of custody or submit other evidence that tampering did not occur.")).

In Petitioner's case, the only evidence upon which Petitioner relies to support a claim of tampering is the statement in the arrest report that officers seized "approximately" 280 grams of "meth oil" from Petitioner's residence, and the FDLE report stating that precisely 219.7 grams of methamphetamine was present in the liquid submitted for testing (*see* Ex. A; ECF No. 1 at 24).  Though this evidence is probably sufficient to demonstrate that Petitioner would have received an evidentiary hearing on his IATC claim at the post-conviction level, it is not sufficient to show a reasonable probability that post-conviction relief would have been granted.  At a post-conviction evidentiary hearing, the State would have had the opportunity to present

evidence of the chain of custody, and any other evidence that tampering did not occur.

*See* Brown v. State, 766 So. 2d 485, 487 (Fla. 5th DCA 2000) (cocaine seized from

car in which defendant in cocaine trafficking prosecution was passenger was not

tampered with, despite discrepancies in weight of cocaine when measured at police

station and at crime laboratory, as bags delivered to laboratory showed all appropriate

markings and no signs of tampering); Garcia v. State, 721 So. 2d 1248, 1248 (Fla. 3d

DCA 1998) (cocaine contraband was properly admitted into evidence in trial of

defendant charged with drug offense, despite discrepancy between weight of cocaine

recovered by police and that introduced into evidence, where there was no evidence

of tampering, and difference in weights was clearly explained, in that weight of 22.3

grams referred to total weight of envelope, pill case, cocaine, marker, and tape, weight

of 10.5 grams referred to weight of cocaine and vial in which it was contained, and

weight of 2.6 grams referred to weight of cocaine itself, without any packaging.);

Robinson v. State, 561 So. 2d 1264, 1265 (Fla. 3d DCA 1990) (cocaine rock was

properly admitted into evidence, despite police chemists' repackaging of cocaine rock,

chemist's explanation as to when, by whom, and for what purpose the package was

opened excluded any likelihood that the contents were altered).  Without any evidence

suggesting that the State would not have been able to establish a chain of custody, or

otherwise clearly explain the weight discrepancy, Petitioner cannot show a reasonable probability that the post-conviction court would have concluded that (1) no competent trial counsel would have forgone the suppression issue, and (2) there is a reasonable probability the trial court would have granted the motion to suppress if trial counsel had made one.

Petitioner has failed to demonstrate that Attorney Rollo was ineffective for failing to include the underlying IATC claim (i.e., trial counsel's failure to file a motion to suppress) in the Rule 3.850 motion.  Therefore, Petitioner fails to satisfy the "cause and prejudice" exception to the procedural bar.  Petitioner is thus not entitled to a merits review of Ground Four.

## V.    CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); <u>Slack v. McDaniel</u>, 529 U.S. 473, 483–84, 120 S. Ct. 1595, 1603–04, 146 L. Ed. 2d 542 (2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED**:

1.      That the petition for writ of habeas corpus (ECF No. 1) be **DENIED**.

2.      That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this 24<u>th</u> day of January 2017.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M.  TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control</u>.  A copy of objections shall be served upon all other parties.   If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**